IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ERIC LEE GOLOMBISKI,

                    Plaintiff,

          v.                                                    OPINION and ORDER

KILOLO KIJAKAZI,                                                22-cv-440-jdp
Acting Commissioner of the Social Security
Administration,

                    Defendant.

---

Plaintiff Eric Lee Golombiski seeks reversal of an adverse decision of the Commissioner of the Social Security Administration, finding him not disabled under the Social Security Act. Golombiski argues that the administrative law judge who decided his claim (1) failed to properly evaluate Golombiski's fibromyalgia, (2) erroneously concluded that Golombiski did not require the use of a cane, (3) impermissibly "played doctor" by interpreting the results of a cervical spine MRI and a functional capacities evaluation, (4) improperly evaluated Golombiski's subjective complaints, and (5) failed to cite reliable evidence in support of her conclusion that there was a substantial number of jobs in the national economy that Golombiski could perform in spite of his limitations. For reasons explained below, the court rejects these arguments. The ALJ sufficiently explained how she evaluated the evidence, and her conclusions have adequate support in the record. So the court will affirm the commissioner's decision.

BACKGROUND

Golombiski applied for supplemental security income and disability insurance benefits in January 2020, at the age of 45. He alleged that he had been unable to work since September 2019 because of back problems, hypertension, asthma, fibromyalgia, chronic pain, and episodic arthritis. After the local disability agency denied his claim initially and on reconsideration, Golombiski requested a hearing, which was held telephonically on January 6, 2022, before ALJ Guila Parker. Golombiski appeared with counsel and testified. The ALJ also heard testimony from a vocational expert.

After the hearing, the ALJ issued a written decision denying Golombiski's request for benefits, following the five-step sequential evaluation process set forth in the regulations. *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). R. 16–30.[1] Working through the first three steps, the ALJ found that Golombiski had the severe impairments of degenerative disc disease of the cervical and lumbar spine, psoriatic arthritis, and obesity, but that none of these impairments alone or in combination were severe enough to be presumptively disabling. The ALJ proceeded to assess Golombiski's residual functional capacity, taking into account the medical evidence and opinions as well as statements from Golombiski and third parties concerning his functional abilities and daily activities. The ALJ determined that Golombiski was able to meet the exertional demands of light work (defined as lifting no more than 20 pounds occasionally with frequent lifting and carrying of objects weighing up to 10 pounds, and requiring a good deal of walking or standing or sitting while operating arm or leg controls) with various additional postural and environmental limitations. She determined that he could frequently handle and

---

[1] Record cites are to the administrative transcript. located at Dkt. 10.

finger with both hands and was capable of frequent, but not constant, rotation, flexion, or extension of the neck. R. 21.

Relying on the vocational expert's testimony, the ALJ found that Golombiski's limitations prevented him from performing his past job as a stock clerk/display assembler. But she found that Golombiski was not disabled under the Social Security Act because he was able to perform other jobs existing in significant numbers in the national economy, namely, cafeteria attendant, office helper, and mail clerk. R. 27–28.

The Appeals Council denied Golombiski's request for review, making ALJ Parker's decision the final decision of the commissioner. Golombiski then filed this appeal under 42 U.S.C. § 405(g).

ANALYSIS

On appeal, this court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

A. Fibromyalgia

The ALJ found that Golombiski had a number of medically determinable impairments, but fibromyalgia was not one of them. Golombiski contends this was error, citing Social Security Ruling 12-2p. That ruling describes how the agency decides whether a claimant's

3

reported fibromyalgia is a medically determinable impairment. Soc. Sec. Ruling, SSR 12-2p; Titles II & XVI: Evaluation of Fibromyalgia, SSR 12-2P, 2012 WL 3104869 (S.S.A. July 25, 2012). According to the ruling, a "physician's diagnosis alone" is not enough; rather, "the evidence must document that the physician reviewed the person's medical history and conducted a physical exam." *Id*. at *2. Further, "the physician" must diagnose fibromyalgia, provide objective medical evidence that satisfies one of two sets of medical criteria for diagnosing the condition, and "the physician's diagnosis [must not be] inconsistent with the other evidence in the person's case record." *Id*.

The ALJ noted some references to fibromyalgia in Golombiski's medical record, but found the condition was not a medically determinable impairment because there were no objective findings to support that diagnosis. R. 23. Golombiski disputes this. He asserts that his record is "replete with references" to fibromyalgia, which he says was "diagnosed by multiple medical providers." Dkt. 12, at 36. But Golombiski doesn't identify these providers by name, much less show that they are "physicians," much less point to objective findings from these particular physicians to show that he meets the established criteria for a fibromyalgia diagnosis. Golombiski seems to read SSR 12-2p as requiring the ALJ (and this court) to scour the medical findings for objective evidence that might support any off-hand reference to fibromyalgia in the record, but this is not supported by a plain reading of the ruling. As noted, the ruling demands a diagnosis from a physician that is supported by objective findings made by "*the* physician," not by the ALJ's lay conclusion that the requisite objective findings can be found scattered throughout the claimant's entire medical record. Golombiski hasn't identified any particular physician's report setting out the required findings, so the court finds no error by the ALJ.

4

In any case, even indulging Golombiski's interpretation of the ruling, the court would still find no error. Golombiski says the evidence of record meets the 2010 American College of Rheumatology's Preliminary Diagnostic Criteria, *see* SSR 12-2p, at *3, but he hasn't shown the required repeated manifestations of six or more fibromyalgia symptoms or co-occurring symptoms, nor has he shown evidence that his doctors excluded other disorders that could cause his signs or symptoms. *Id*. So the ALJ correctly determined that there was insufficient evidence showing that fibromyalgia was a medically determinable impairment.

## B.  Use of a cane

Golombiski next argues that the ALJ erred by failing to include a cane requirement in the RFC. A cane must be incorporated in an RFC if it is a medical necessity. *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012). This requires "medical documentation establishing the need for [the cane] to aid in walking or standing, and describing the circumstances for which it is needed." See SSR 96-9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). "The mere fact that the claimant has been seen or reported to be using an assistive device is not sufficient." *Limberg v. Kijakazi*, No. 21-CV-189-BBC, 2022 WL 406057, at *6 (W.D. Wis. Feb. 10, 2022) (citing *Tripp*, 489 F. App'x at 955)). Rather, there must be an "unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary." *Id*.

Here, the ALJ noted that Golombiski testified that he used a cane about half the time and that the cane had been prescribed and covered by insurance; she also noted that Golombiski's friends had submitted reports noting that he occasionally used a cane when his pain was bad. R. 22, 27. But the ALJ found inadequate support for a cane restriction, noting that use of a cane had been mentioned only twice in the medical evidence: (1) in September 2020, when Golombiski reported using a cane for three days; and (2) during a February 2022

functional capacity evaluation (FCE) administered by Kasey Fancher, who noted that Golombiski used a cane during testing of his ability to walk and climb stairs. R. 29.

Contrary to Golombiski's argument, the ALJ's rationale for rejecting a cane restriction was sufficiently articulated and supported by the evidence. Golombiski hasn't identified any physician's opinion in the record stating that he needed a cane for ambulation. His strongest evidence is the FCE, but Fancher is a physical therapist, not a physician, and in any case, her mere observation that Golombiski used a cane is not the same as an opinion that he needed a cane. The claimant bears the burden of producing medical evidence in support of his claimed limitations. *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). The ALJ did not err in concluding that Golombiski had not met this burden with respect to his asserted need for a cane.

## C. Cervical spine limitations

Golombiski challenges the ALJ's assessment of his neck limitations. At the hearing, Golombiski testified that he could not turn his head more than 15 degrees to the right because of neck pain, and that he had pain and vertigo if he looked down for too long. The ALJ credited this testimony in part, finding that Golombiski had some limitations on looking up, down, and side-to-side "because of cervical spine issues." R. 27. Specifically, the ALJ found that he was "capable of frequent, but not constant, rotation, flexion, or extension of the neck."

Golombiski first argues that this finding must be reversed because the record did not contain a medical opinion "which correlates to this limitation." Dkt. 12, at 31. But the ALJ isn't required to adopt a particular medical opinion to support the RFC. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Rather, in assessing a claimant's RFC, the ALJ must "incorporate all of the claimant's limitations supported by the medical record" and provide

enough reasoning to allow the court to understand the basis for her conclusions. *See Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021); *Crump v. Saul*, 932 F. 3d 567, 570 (7th Cir. 2019). Here, the ALJ explained that she was including the limitation on neck motion to accommodate Golombiski's "cervical spine issues," which she found supported by "imaging and occasional objective exam findings that note some functional deficits, particularly those of the lumbar spine." R. 27. But she found further restrictions unnecessary given other neurological exam findings that were normal and which indicated that Golombiski was in no distress and had full range of motion and strength. R. 27.

Golombiski argues that the ALJ should not have relied on a December 2021 MRI of Golombiski's cervical spine as a basis for her limitations without consulting with a medical expert. The court of appeals has sometimes criticized an ALJ for attempting to interpret the significance of an MRI on her own. *See, e.g., Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). *But see Olsen v. Colvin*, 551 F. App'x 868, 874–75 (7th Cir. 2014) (rejecting contention that ALJ "played doctor" by stating that MRIs showed "mild abnormalities"). But that's not what happened in this case. Instead, as in *Bolin v. Saul*, No. 20-cv-348-jdp, 2021 WL 567899, at *2 (W.D. Wis. Feb. 16, 2021), the ALJ concluded that other evidence showed that Golombiski's neck impairment wasn't disabling, without relying specifically on the MRI. Specifically, immediately after noting the cervical MRI findings, the ALJ noted that an examination of Golombiski's neck at that time "revealed normal range of motion, no paraspinal tenderness" and other normal findings, with the exception of 4/5 strength of the finger flexors/extensors on the left and a positive Spurling's test on the same side.[2] R. 25. The ALJ further noted that

---

[2] Spurling's test is a provocative test designed to diagnose nerve compression. https://webmd.com/back-pain/what-is-spurling-test (visited Sept. 26, 2023).

Golombiski reported that his pain was a 5 out of 10 and was "intermittent." R. 25. Other evidence cited by the ALJ in support of her RFC finding was Golombiski's ability to drive, use his snowblower, hang a ceiling fan, take care of a large piece of property, and occasionally work on cars. *Id*. The ALJ's decision makes clear that she based her assessment of Golombiski's cervical limitations on actual examinations and observations of his neck range of motion and on the record as a whole, not on her lay opinion of the MRI findings.

Finally, Golombiski argues that the ALJ should have sought a medical opinion to evaluate the February 2022 FCE, on which Kancher observed that Golombiski had "very limited" cervical extension and "limited" left cervical lateral flexion and rotation. Dkt. 12, at 32. But the FCE was written in plain English, in terms that weren't beyond the ability of a layperson to understand. *See* R. 749–758. So the ALJ was not prohibited from interpreting it. *See Callaway v. Saul*, No. 19-CV-818-JDP, 2020 WL 2214385, at *2 (W.D. Wis. May 7, 2020) (medical expertise not required where evidence can be understood by a layperson).

That said, the ALJ committed a slight error with respect to the FCE. She noted that during the FCE, Golombiski was noted to have "very limited" cervical extension, but "normal bilateral flexion and rotation." R. 26. This is not correct: Kancher described Golombiski as having "limited" rotation on the left. R. 754. Golombiski has not identified this error as a ground for remand, so he has waived it. *See, e.g., Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018)(perfunctory and undeveloped arguments are waived). But even if he hadn't, the court would not reverse on this basis. Kancher was not offering a medical opinion of Golombiski's neck restrictions, but was merely recording her observations on that date. As the ALJ pointed out, Dr. Kris Ferguson, a pain management specialist, examined Golombiski's neck in late 2021 and found that he had normal range of motion, normal sensation, and no tenderness. R. 25

(citing R. 669). And no doctor endorsed more severe limitations than the ALJ found. Because the court is confident that the result would not change on remand, the error is harmless and remand is not required. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).

## D. Evaluation of subjective complaints

Golombiski challenges the ALJ's refusal to fully credit his subjective allegations of disabling limitations. Under the social security regulations, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, at *9. Reviewing courts "will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong,' meaning it lacks explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (quoting *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). Not all the ALJ's reasons for discounting a claimant's subjective complaints need survive scrutiny so long as some of them do. *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011).

Here, the ALJ rejected Golombiski's subjective allegations of disability because they were not fully supported by the objective medical evidence, Golombiski's course of treatment, or the medical opinions. In addition, the ALJ noted that Golombiski engaged in some daily activities that undermined his allegations, including playing video games, driving, doing some laundry and light housework, and he sometimes mowed the lawn and worked on cars. R. 25–26. She also cited medical records documenting that he had performed activities such as using his snowblower and hanging a ceiling fan, and one noting that he was responsible for taking care of a large piece of property. R. 26. Overall, the evidence cited by the ALJ in support of her

subjective symptom analysis reasonably supports her conclusion that, although Golombiski had pain and resulting limitations from his impairments, his subjective symptoms were not so severe as to preclude him from the limited range of light work that she identified in her decision.

Golombiski's challenges to the ALJ's credibility determination are not persuasive. First, he repeats his argument that the ALJ improperly relied on her layperson's interpretation of the 2021 MRI as a basis for not fully crediting his testimony about his neck problems. For reasons just discussed, the court rejects that argument. Further, a diagnosis alone is not evidence of disability. Just because the cervical MRI showed some abnormalities doesn't mean the ALJ was required to fully accept Golombiski's subjective complaints and ignore all the other evidence in the record suggesting lesser limitations.

Second, Golombiski argues that the ALJ committed legal error by considering his reported ability to take care of a large piece of property without inquiring about what that entailed. But the ALJ need not ask the claimant about inconsistencies in his medical records except for those relating to a failure to follow prescribed treatment. *See McHenry v. Berryhill*, 911 F.3d 866, 873 (7th Cir. 2018) ("[W]hether McHenry testified credibly about driving is not a matter of her medical treatment history, so the ALJ did not need to inquire."). Regardless, this was only one of several reasons given by the ALJ for deciding not to fully credit Golombiski's subjective complaints. Because the other reasons cited by the ALJ are adequately explained and supported by the record, the court must uphold the credibility determination.

**E.  Step five determination**

At the hearing, the ALJ elicited testimony from a vocational expert, Roxanne Benoit, to determine whether there were jobs that a person with Golombiski's limitations could perform, and if so, how many of those jobs existed in the national economy. In response to a hypothetical

that included the RFC limitations that the ALJ would ultimately adopt in her decision, Benoit identified three examples of unskilled jobs in the *Dictionary of Occupational Titles* that the hypothetical individual could perform: cafeteria attendant, of which she estimated there were 28,000 jobs; office helper, of which there were 96,000 jobs; and a non-postal mail clerk, of which there were 39,000 jobs. R. 61.

The ALJ then asked Benoit how she estimated the job numbers. R. 63. Benoit responded that she relied primarily on the *Occupational Employment Quarterly* (OEQ), which is a private source that collects data from the United States Department of Labor's Bureau of Labor Statistics (BLS). R. 63. She then consulted a second source, a computer program called Job Browser Pro, to obtain the percentage of jobs that were full time, and then applied that percentage to the number of jobs she had obtained from the OEQ. R. 63. The ALJ asked Benoit whether her method was reasonably accepted in the field of vocational rehabilitation; Benoit replied that she believed so. *Id*.

On cross-examination, Golombiski's counsel asked Benoit whether the OEQ used an "equal distribution method," and Benoit confirmed that it did.[3] R. 64. She then elaborated, stating:

> However, we break it down, because there are no current publications that provide job numbers based on DOT codes. So, we will take a particular DOT code, find the census code, which we can find in Job Browser Pro, which is a resource that vocational people rely on, and then we refer to the census code on the OEQ

---

[3] As the commissioner notes, the OEQ uses data from the Bureau of Labor Statistics and the Census to provide current jobs data reported by *Standard Occupational Classification* (SOC) code, as well as a crosswalk manual that allows users to see the DOT codes included in each SOC grouping. *See* https://www.uspublishing.net/oeqii_page.html (visited Sept. 26, 2023). The OEQ estimates the number of jobs for each DOT code by using the "equal distribution method," which "divides the number of jobs estimated for an SOC code by the number of DOT titles contained within that SOC code." *Ruenger v. Kijakazi*, 23 F.4th 760, 762 (7th Cir. 2022).

> and you know, it's in categories so they will tell us how many are sedentary, unskilled jobs, based on their research and then I multiply it, like I told the Judge, by the full time, part time number found in Job Browser Pro section on employment. So, you know, it is an estimate, but I don't find it to be out of the question. I think it's a very reasonable approach to getting numbers and it's really about the best we can do.

R. 64–65.

Counsel then asked Benoit whether she had consulted any other study or source to confirm the accuracy of the job numbers. R. 65. Benoit replied:

> Well, you know, they rely on BLS, so I have to trust that the government is efficient at collecting data, but it does get compared to, at least in my group, we compare it to Job Browser Pro numbers and typically they're very similar. So, you know, like I said, that's the best I can do. That any of [us] can, really.

R. 65.

In her decision, the ALJ relied on Benoit's testimony to find at the fifth step of the sequential evaluation that Golombiski could perform a substantial number of jobs in the national economy. R. 29. The ALJ concluded that Benoit's methodology for estimating job numbers was reliable, noting that it was supported by "government studies and publications, a commonly used software program, and her own education, training, and experience in the field of vocational rehabilitation." *Id*

On appeal, Golombiski argues that this finding was not supported by substantial evidence. Primarily, he argues that Benoit's methodology was flawed because she obtained her job numbers from the OEQ, which in turn relies on the equal distribution method. The Seventh Circuit has questioned the reliability of the equal distribution method based on its "illogical assumption that all job titles within a particular DOT job group exist in equal numbers in the national economy." *Chavez v. Berryhill*, 895 F.3d 962, 966 (7th Cir. 2018). But as Golombiski

12

recognizes, the court has not enjoined use of the method to estimate job numbers. *Id*. at 970. Whatever method is used, so long as it is "supported with evidence sufficient to provide some modicum of confidence in its reliability," then the ALJ may rely on it. *Id*. at 969. The problem in *Chavez* was that, even after persistent questioning, the VE had failed to offer an affirmative explanation for his conclusion that the 108,000 jobs produced by the equal distribution method was a more reliable estimate than the 800 jobs produced by JobBrowser Pro software, which used an occupational density method. *Id.*

In contrast to *Chavez*, Benoit's testimony in this case provided the requisite "modicum of confidence" in her job number estimates. Benoit acknowledged that the OEQ relied on the equal distribution method, but she explained that her use of the OEQ to estimate job numbers was a reasonably accepted approach in the field of vocational rehabilitation, and that the estimates it produced were not "out of the question." What is more, she testified that when cross-checked against the numbers produced by the JobBrowser Pro software, the numbers produced by her method were "typically very similar." From this testimony, the ALJ could reasonably conclude that Benoit had a reasonable degree of confidence in her estimates and that they were not conjured from whole cloth.

Golombiski next argues that Benoit's testimony "itself was flawed and inconsistent with the actual available data," which he purports to present in his brief. Dkt. 12, at 18. But he forfeited this argument by failing to present this data to Benoit during the hearing, or even to submit it to the ALJ in a post-hearing brief. *Fetting v. Kijakazi*, 62 F.4th 332, 338 (7th Cir. 2023) ("[T]o avoid forfeiture, a claimant must do more than make a general objection or vaguely ask the VE about his methodology" but must "raise specific concerns" about the VE's

testimony or the methodology used). Because Golombiski's challenge rests on facts that are not part of the administrative record, the court declines to address it.

Finally, Golombiski questions whether the jobs of mail clerk and cafeteria attendant as described in the *Dictionary of Occupational Titles* can be performed by someone limited to frequent, but not constant, rotation, flexion, or extension of the neck. Dkt. 12, at 19–20. Once again, he forfeited that challenge by not objecting at the hearing. And in any case, as Benoit explained, the DOT doesn't address neck movement, so her testimony that Golombiski could perform those jobs supplemented and did not conflict with the DOT. "Where testimony merely supplements rather than conflicts with DOT, the ALJ does not have an affirmative obligation to inquire about the conflict," and the claimant forfeits his arguments by failing to object to the testimony during the administrative hearing. *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016).

## F. Conclusion

The court doesn't doubt that Golombiski's back and neck impairments cause pain and other limitations on his work abilities, and a different ALJ might have decided this case differently. But under the deferential substantial evidence standard, this court must affirm the ALJ so long as reasonable people could find the evidence adequate to support the ALJ's conclusion. ALJ Parker's decision in this case clears that low threshold, so it must be affirmed.

14

ORDER

IT IS ORDERED that Eric Golombiski's motion for summary judgment, Dkt. 11, is DENIED. The decision of the Acting Commissioner of Social Security denying Golombiski's application for disability insurance benefits and supplemental security income is AFFIRMED. The clerk of court is directed to enter judgment and close this case.

Entered September 27, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

15